**IT IS ORDERED as set forth below:**

**Date: September 4, 2026**

**James R. Sacca**
**U.S. Bankruptcy Court Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

IN RE:

DOUGLAS BRILLIANT,

Debtor.

CASE NO. 26-50053-JRS
CHAPTER 7

SEAN DANA,

Plaintiff,

v.

DOUGLAS BRILLIANT,

Defendant.

ADVERSARY PROCEEDING
NO. 26-05070-JRS

**ORDER ON MOTION TO DISMISS**

Before the Court is the Renewed Motion to Dismiss First Amended Complaint (the “Motion”) filed by Douglas Brilliant (“Mr. Brilliant”). [Adv. Pro. Dkt. No. 24].

The Court has also considered the Response ("Response") to the Motion filed by Sean Dana ("Mr. Dana"). [Adv. Pro. Dkt. No. 27]. For the reasons set forth herein, the Court **GRANTS** the Motion with respect to Count II and **DENIES** the Motion as to all other Counts.

## I. Background

Mr. Dana, Mr. Brilliant, Steven Gorn ("Mr. Gorn") and Mr. James O. Sullivan ("Mr. Sullivan") were all co-owners of Stone Medical Group LLC ("SMG").[1] [Am. Compl. ¶ 10, Adv. Pro. Dkt. No. 9]. The shares of SMG were held as follows: (1) Mr. Dana, through S & D Wholesale, Inc. - 32%; (2) Mr. Brilliant, through Brilliant Enterprises, Inc. ("BE") – 32%; (3) Mr. Gorn, through Gorn and Associates Inc. ("GA") – 32%; and (4) Mr. Sullivan – 4%. Id.

In December 2019, the four co-owners of SMG came to an agreement for Mr. Brilliant, Mr. Gorn and Mr. Sullivan to purchase Mr. Dana's ownership interest in SMG, which was memorialized though a promissory note ("SMG Note"). Id. ¶¶12-13. Under the terms of the SMG Note, SMG, through Mr. Brilliant, Mr. Gorn and Mr. Sullivan, along with sixteen other entities managed by Mr. Brilliant and/or Mr. Gorn ("Promissory Entities"), agreed to purchase Mr. Dana's shares. Id. ¶ 12 & Ex. A, Adv. Pro. Dkt. No. 11.[2] Payments under the SMG Note were to commence on January 20, 2022. Id. ¶ 14 & Ex. A.

After Mr. Dana sold his shares, the interests in SMG were held as follows: (1)

---

[1] None of the recited allegations are or are to be construed as findings of fact. The Court merely avoids overuse of words such as "allegedly" for brevity purposes.

[2] "On a motion to dismiss, the Court may consider documents attached to the Complaint or directly referred to in the Complaint." *Jordan v. Mia.-Dade Cnty.*, 439 F. Supp. 2d 1237, 1241 (S.D. Fla. 2006).

GA – 47.5%; (2) BE – 47.5%; and (3) Mr. Sullivan – 5%. Am. Compl. ¶16.

GA is a Florida entity that is owned and controlled by Mr. Gorn, has no employees, assets or operations, and is used by Mr. Gorn to receive and hide transfers of assets for his sole personal benefit. Id. ¶¶ 40 – 42.

BE is a Florida entity that is owned and controlled by Mr. Brilliant, has no employees, assets or operations, and is used by Mr. Brilliant to receive and hide transfers of assets for his sole personal benefit. Id. ¶¶ 43 – 45.

SMG and the Promissory Entities defaulted on the SMG Note from and after January 2022, which resulted in Mr. Dana filing a lawsuit on September 8, 2022, in Palm Beach County Circuit Court ("SMG Litigation"). Id. ¶¶ 19-20. In response to the SMG Litigation, SMG and the Promissory Entities admitted default under the note and raised a defense of "impossibility of performance," alleging that payments could not be made due to insolvency resulting from operating losses and a lack of cash flow. Id. ¶ 21-22.

Prior to default, SMG and the Promissory Entities were receiving revenue that would have permitted the obligations to Mr. Dana to be paid. Id. ¶ 27. At the time of default, and continuing after, however, Mr. Brilliant in his capacity as owner and managing member of SMG and the Promissory entities, began diverting substantial assets from SMG to other entities, resulting in SMG's insolvency and harm to Mr. Dana. Id. ¶¶ 23 – 25, 27, 38. The asset transfers from SMG went into shell companies, such as BE and GA, which are owned and controlled by Mr. Brilliant, Mr. Gorn, and Mr. Sullivan, for no consideration, were done to leave SMG insolvent, and resulted in

the breach of the SMG Note. Id. ¶¶ 35 – 37. These transactions that left SMG insolvent were approved and directed by Mr. Brilliant, Mr. Gorn, and Mr. Sullivan. Id. ¶ 39.

During the SMG Litigation, SMG through Mr. Brilliant and Mr. Gorn, directed millions of dollars in distributions to BE and GA for the sole benefit of Mr. Brilliant and Mr. Gorn, while representing to the court that SMG was insolvent and could not pay Mr. Dana what he was owed. Id. ¶¶ 46 – 47.

Ultimately the SMG Litigation resulted in a Final Summary Judgment ("SMG Judgment") in favor of Mr. Dana, on March 21, 2023. Id. ¶ 26 & Ex. B, Adv. Pro. Dkt. No. 11.

On March 20, 2023, and on April 28, 2023, Mr. Brilliant initiated three Assignment for the Benefit of Creditors ("ABC") for three companies owned and controlled by him, one of which was SMG, and the other two were from the Promissory Entities group (together, the "ABC Litigation"). Am. Compl. Id. ¶ 48. Other entities from the Promissory Entity group were intentionally left out of the ABC Litigation so that Mr. Brilliant, Mr. Gorn and Mr. Sullivan could use them to siphon money away from SMG. Id. ¶ 54. One company from the Promissory Entity group, Medical Supply Management LLC, moved its principal place of business from Florida to New York, under the control and authorization of Mr. Brilliant, Mr. Gorn and Mr. Sullivan, so it could operate while the rest of the Promissory Entities appeared to be insolvent. Id. ¶ 55.

In addition to operating SMG and the Promissory Entities, Mr. Brilliant

continued to do business in the medical supply sales field using nine newly formed companies, all formed in 2023 ("Alleged Alter Ego Entities"), that he either has an ownership interest in or a business relationship with, and each entity has transferred funds to Mr. Brilliant. Id. ¶¶ 56 – 58. These Alleged Alter Ego Entities all share similar addresses and managers. Id. ¶ 60.

Mr. Brilliant has refused to produce books and information in the ABC Litigation. Id. ¶¶ 53, 59. Additionally, SMG was reinstated on July 8, 2025, and now lists Mr. Gorn as the registered agent and GA and BE as the managers. Id. ¶ 61.

In March of 2023, SMG, under the authority of Mr. Brilliant, Mr. Gorn and Mr. Sullivan, made two wire transfers totaling $83,000.00 to Orange Acute Care Network Inc. ("Orange"). Id. ¶¶ 62 – 63. Orange was formed by Mr. Sullivan and was transferred to a former employee for little or no value, and these transfers were made in anticipation of the SMG Judgment and ABC Litigation. Id.

SMG's records show that from February 2022 to February 2023, SMG made nineteen wire transfers to BE totaling $1,198,643.89. Id. ¶ 66. SMG's records also show that from February 2022 to January 2023, SMG made six wire transfers to GA totaling $469,000. Id. ¶ 68. These transfers were for the sole benefit of Mr. Brilliant and Mr. Gorn, done without consideration, and were completed prior to the SMG Judgment and ABC Litigation. Id. ¶ 67.

These transfers from SMG to GA and BE prompted Mr. Dana to file another lawsuit in Palm Beach County Florida on December 30, 2024, against Mr. Brilliant, Mr. Gorn, BE, and GA, for fraudulent transfer of assets. Id. ¶ 69. This litigation is

open, but has been stayed due to Mr. Brilliant and Mr. Gorn's bankruptcies. Id.

Mr. Dana initiated this adversary proceeding on April 6, 2026. [Adv. Pro. Dkt. No. 1] and filed an Amended Complaint ("Am. Comp.") on March 21, 2026. [Adv. Pro. Dkt. No. 9]. Mr. Dana asserts the following causes of action in the Am. Comp.:

1. Count I: 11 U.S.C. § 523(a)(2)(A)
2. Count II: 11 U.S.C. § 523(a)(4)
3. Count III: 11 U.S.C. § 523(a)(6)

Mr. Brilliant moved to dismiss all Counts for failure to state a claim upon which relief can be granted, or in the alternative, for a more definite statement. [Adv. Pro. Dkt. No. 24].

## II. Discussion

### A. Legal standard for Rule 12(b)(6) motion to dismiss

Federal Rule of Civil Procedure 12(b)(6) permits the dismissal of a complaint if it fails to "state a claim upon which relief can be granted." F.R.C.P 12(b)(6). This rule is viewed through Federal Rule of Civil Procedure 8(a)(2) and Federal Rule of Bankruptcy Procedure 7008. F.R.C.P. 8(A)(2), F.R.B.P. 7008. "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). In contrast to factual allegations, the Court does not accept legal conclusions as true. *Id.* The "plausibility standard" is less than a probability requirement, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The Court construes those well-pleaded, plausible facts "in the light favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

Additionally, a heightened pleading standard applies to fraud. *Eden v. Eden (In re Eden)*, 584 B.R. 795, 803 (Bankr. N.D. Ga. 2018) (citations omitted). Federal Rule of Civil Procedure 9(b), incorporated by Federal Rule of Bankruptcy Procedure 9, states "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Rule 9(b) is satisfied in the Eleventh Circuit if a complaint pleads:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*In re Eden*, 584 B.R. at 803-04 (quoting *Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir. 2007)).

**1. Mr. Dana Pled Defendant's Personal Liability with Required Specificity.**[3]

Mr. Brilliant argues that the Am. Comp. suffers from a threshold defect of lack of specificity, that is present in all three counts: (a) it fails to plead adequate facts that establish why Mr. Brilliant is liable for actions committed by others, such as SMG, Mr. Gorn, Mr. Sullivan and other corporate entities, or what specific acts Mr. Brilliant committed; (b) it fails to substantiate the claim that BE is the alter ego of Mr. Brilliant; and (c) it fails to meet Rule 9(b) requirements because it only alleges general corporate activity between a variety of entities, instead of providing the specific information that Rule 9(b) requires.

Mr. Dana responds that: (a) the Am. Comp. does plead sufficient facts to show that not only are SMG and related entities managed and controlled by Mr. Brilliant, but that the actions of these companies were caused by Mr. Brilliant for his own benefit and to avoid repaying the debt to Mr. Dana; and (b) the facts included in the Am. Comp. meet the Rule 9(b) requirements by providing that the transfers were fraudulent diversions of company revenues and specifics on: (1) who made the transfers, (2) the specific date of the transfers, (3) what bank accounts and entities handled and received the transfers, and (4) how these transfers were concealed and made.

[3] The Court addresses the arguments in the order they were made by the parties.

The Court finds that the Am. Comp. sufficiently pleads facts that are specific enough to state a plausible claim for relief and form a reasonable inference that Mr. Brilliant may be liable. The Am. Comp. establishes that SMG and related Promissory Entities are closely held entities. Am. Compl. ¶¶ 10, 12 – 13, 16, 40 – 45. BA, GA, and Sullivan are the only shareholders of SMG, and Mr. Brilliant is the only manager director of BA and Gorn is the only manager director of GA. Id. Between Mr. Brilliant, Mr. Gorn and Mr. Sullivan, they manage and control multiple other entities that are related to SMG and were involved in numerous asset transfers that occurred after the default on the Promissory Note. Id. ¶¶ 12, 16, 40 – 45, 56 – 58, 60, 62 – 68 & Ex. A.

The specificity required by Rule 9(b) has also been met. The Am. Comp. identifies twenty-seven different wire transfers to Orange, BE and GA, and specifies the date of these transfers, and what banks and accounts were involved. Id. at 62 – 68. SMG is identified as initiating these transfers, and the Am. Comp. establishes who manages and controls SMG. Id. ¶¶ 16, 40 – 45, 62 – 68. These transfers went to specific identified entities, each of which are managed and controlled solely by Mr. Brilliant, Mr. Gorn, or Mr. Sullivan. Id. These transfers occurred after default on the Promissory Note, and after funds were transferred into SMG accounts. Id. ¶¶ 27, 34 – 35, 46, 62 – 68.

These facts are not only specific enough to state a plausible claim for relief, but also to satisfy Rule 9(b).

**B. Count I: 11 U.S.C. § 523(a)(2)(A)**

11 U.S.C. § 523(a)(2)(A) excepts a debt from discharge if it is "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."

In order to prevail on a claim under § 523(a)(2)(A), the creditor must prove: "(1) the debtor made a false representation to deceive the creditor [or the debtor used false pretenses, or committed actual fraud], (2) the creditor relied on the misrepresentation, (3) the reliance was justified, and (4) the creditor sustained a loss as a result of the misrepresentation." *Sec. and Exch. Comm'n v. Bilzerian (In re Bilzerian)*, 153 F.3d 1278, 1281 (11th Cir. 1998) (citations omitted); *accord Harris v. Jayo (In re Harris)*, 3 F.4th 1339, 1344 (11th Cir. 2021) (citations omitted). "[T]he false pretense and false representation prongs of § 523(a)(2)(A) each require an 'intentional wrong'—the false pretense or the false representation 'must have been knowingly and fraudulently made.'" *In re Harris*, 3 F.4th at 1345 (quoting 4 COLLIER ON BANKRUPTCY ¶ 523.08[1][d] (16th ed. 2018)).

Mr. Brilliant argues that the § 523(a)(2)(A) claim suffers from the following three distinct reasons: (1) it does not identify the debt to be excepted from discharge; (2) the Eleventh Circuit decision in *Gaddy* controls and defeats the claim; and (3) Mr. Brilliant did not actually obtain any assets personally from the transfers.

**1. The Amended Complaint identifies what debt is excepted from discharge.**

Mr. Brilliant argues that while the Am. Comp. refers to the Promissory Note, the Final Summary Judgment and Mr. Brilliant's alleged personal liability for the transfers, there is no clear identification of the operative debt that should be excepted from discharge.

When determining the debt that is excepted from discharge under §523(a)(2)(A), the Supreme Court of the United States has made clear that the "exception encompasses any debt…to the extent…[it] is obtained by fraud." Cohen v. de la Cruz, 523 U.S. 213, 218 (1998); *see* In re Vanwinkle, 562 B.R. 671, 678 (Bankr. E.D. Ky. 2016) (Holding that to make a § 523(a)(2)(A) exception claim, the debt must be shown to have been obtained by actual fraud); In re Moradi, 2026 WL 915638 at *10 (B.A.P. 9th Cir. Apr. 3, 2026) (Holding that that amount of damages that could be excepted under § 523(a)(2)(A) is limited to the amount that was fraudulently transferred, not the entire value of the preexisting judgment).

The Am. Comp. does address the Promissory Note and the Final Summary Judgment. Id. ¶¶ 12, 26, Ex. A, B. The debt created by these documents, however, are not the amounts that would be excepted from discharge under § 523(a)(2)(A), as they were not based on fraudulent transfers. These documents aside, the Am. Comp. does detail numerous transfers that are alleged to be fraudulent. Am. Comp. ¶¶ 62 – 69. Specifically, SMG transferred $83,000.00 to Orange in 2023. Id. at ¶ 63. SMG transferred $1,198,643.89 to BE from 2022 to 2023. Id. at ¶ 66. SMG also transferred $469,000.00 to GA from 2022 to 2023. Id. at 68. The Am. Comp. provides the specific

dates, amounts and information about how and where these transfers were made, and identifies that collectively these transfers are the "Fraudulent Transfers". Id. at ¶¶ 63, 66, 68 & 70. Mr. Dana also states that the full extent of these Fraudulent Transfers "shall be determined and identified as discovery progresses." Id. at ¶ 70.

As previously discussed, SMG is closely held corporation with Mr. Brilliant as one of the controlling directors. Id. ¶ 16. BE is a corporation solely controlled and managed by Br. Brilliant. Id. ¶¶ 43 – 45. The facts put forth in the Am. Comp. are sufficient to show that these aforementioned transfers are the alleged fraudulent transfers which could be excepted from discharge under § 523(a)(2)(A). The fact that Mr. Dana has stated that additional discovery is necessary indicates why a definite non-dischargeable amount has not been provided. Based on the identified transfers, there are enough facts to indicate the specific debt that is non-dischargeable, and Mr. Dana plausibly alleged these transfers were fraudulent.

**2. Mr. Brilliant's reliance on *Gaddy* is misplaced; rather *Husky* applies and supports a plausible fraud claim.**

Mr. Brilliant next argues that the debt was not obtained by fraud based on the Eleventh Circuit's holding in *Gaddy*, SE Property Holdings, LLC v. Gaddy (In re Gaddy), 977 F.3d 1051 (11th Cir. 2020), which held that a pre-existing debt cannot be nondischargeable under § 523(a)(2)(A). Id. at 1058. Mr. Brilliant contends that because the Promissory Note was executed in 2019, and the first alleged fraudulent transfer was not until February 2022, *Gaddy* establishes that these post-debt transfers are not fraudulent under § 523(a)(2)(A).

Mr. Dana argues that the transfers were fraudulent according to the Supreme Court's ruling in *Husky*. Husky International Electronics, Inc. v. Ritz, 578 U.S. 355 (2016). Per *Husky*, actual fraud for purposes of § 523(a)(2)(A) "encompasses fraudulent conveyance schemes, even when those schemes do not involve a false representation." Id. at 366. So, if actions are fraudulent, and conducted with wrongful intent, they amount to actual fraud that can be excepted from discharge. Additionally, fraud can come in many forms for § 523(a)(2)(A) purposes, such as fraudulent conveyance schemes, which do not require one to make a false representation.

Mr. Brilliant's reliance on *Gaddy's* application is misplaced, as it is factually distinguishable from the matter at hand. In *Gaddy*, Gaddy personally guaranteed a loan that was made to an entity he had control over. In re Gaddy, 977 F.3d at 1054. After the entity defaulted on the loan, Gaddy transferred assets from this entity to his wife and daughter. Id. After Gaddy declared bankruptcy, the creditor claimed the debt owed to it by Gaddy was not dischargeable because the transfer of these assets was fraudulent. Id. The Eleventh Circuit agreed with the bankruptcy court that the transfers could not render the debt nondischargeable because Gaddy was involved with and responsible for the original debt. Id. at 1057-1058.

In contrast, *Husky* involves a factual scenario that is similar to this situation. In *Husky*, an entity, Chrysalis, owed money to Husky. Husky, 578 U.S. at 357-358. Upon Chrysalis's default to Husky, the person who controlled Chrysalis moved assets out of Chrysalis to other companies he controlled. Id. at 358. Later, when that individual declared bankruptcy, the Supreme Court determined that under

applicable state law the individual took on Chrysalis's debt due to the fraudulent nature of the transfers. Id. at 365. Therefore, any debt traceable to that transfer would be nondischargeable. Id.

The Eleventh Circuit's ruling in *PRN Real Estate* also reinforces Mr. Dana's stance. PRN Real Estate & Investments, Ltd. v. Cole, 85 F.4th 1324 (11th Cir. 2023). In *PRN Real Estate*, an entity that was controlled by Cole was indebted to a creditor. Id. at 1328. To avoid repayment of the debt, Cole transferred assets out of the entity to other entities he controlled, and then Cole declared bankruptcy. Id. at 1329. The creditor then initiated a § 523(a)(2)(A) claim, arguing those transfers were fraudulent. Id. at 1331. Relying on *Husky*, the court held that under the applicable state law, Cole took on the original debt of the entity based on the fraudulent transfers. Id. at 1345 – 1347. Because that debt was traced to the fraudulent receipt of money, it was nondischargeable. Id.

Here, the facts as alleged show that *Husky* and *PRN Real Estate* apply. Mr. Dana is owed a debt by SMG that was never personally guaranteed by Mr. Brilliant. Id. ¶¶ 12, 18, 26, 76 & Ex A, B. After SMG breached its repayment obligation, funds that potentially could have paid this debt were transferred out of SMG's accounts to other entities controlled by Mr. Brilliant. Id. ¶ 66. Mr. Brilliant then declared bankruptcy and Mr. Dana initiated this adversary proceeding against Mr. Brilliant. This is *Husky*, not *Gaddy*. Here, the distinction and focus are on when did Mr. Brilliant obtain the debt. If Mr. Brilliant had initially been obligated on the debt, and then transferred assets of SMG away to avoid paying, arguably *Gaddy* could

apply and the transfers would not be subject to a claim under § 523(a)(2)(A). But this is not what happened. Here, SMG was liable for the initial debt, but assets were transferred from SMG to other entities owned and controlled by Mr. Brilliant. So, the facts show that it is plausible that these transfers could be fraudulent and Mr. Brilliant could be liable because he took on the debt as explained below.

**3. Mr. Brilliant plausibly obtained assets from the alleged transfers.**

Mr. Brilliant argues that the Am. Comp. does not plead facts that he personally obtained money through fraud because the transfers in the complaint were from one entity to another, that Mr. Dana failed to show that BE's corporate existence should be disregarded as an alter ego, and the Am. Comp.'s bare legal conclusions do not establish these required facts.

Mr. Dana argues that Mr. Brilliant made significant monetary transfers for his benefit to companies he solely controlled. Mr. Dana supports these claims by providing the specifics of these transfers and alleges facts that the companies that received these funds, such as BE, are closely or solely controlled by Mr. Brilliant.

The Court finds Mr. Brilliant's arguments unpersuasive. The Am. Comp. establishes that BE, a corporation that is controlled and owned by Mr. Brilliant, has no employees, assets or operations. ¶¶ 43 - 45. Additionally, BE received approximately $1.2 million in asset transfers from SMG from February 2022 to February 2023 for no consideration. ¶¶ 66-67. These facts are enough to overcome the initial threshold required by *Iqbal* and establish that it is plausible that Mr. Brilliant personally benefited from these transfers and took on the debt.

For the aforementioned reasons, the Motion is denied as to this Count.

**C. Count II: 11 U.S.C. § 523(a)(4)**

11 U.S.C. § 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."

**1. No trust exists that is required for the fiduciary relationship under § 523(a)(4).**

Mr. Brilliant argues: (a) that for § 523(a)(4) to apply, the Eleventh Circuit requires a pre-existing express or technical trust to be present; (b) that a general fiduciary duty is insufficient for §523(a)(4) purposes; and (c) Mr. Dana does not allege that the required pre-existing trust exists, and one was not created by the Promissory note, therefore § 523(a)(4) is not applicable.

Mr. Dana argues that a fiduciary relationship is plausibly alleged, and whether this relationship is sufficient for § 523(a)(4) purposes is a "fact-intensive inquiry not suitable for dismissal." Mr. Dana alleges that upon SMG's insolvency, this fiduciary relationship expanded to SMG's creditors, including Mr. Dana.

In the context of § 523(a)(4), what relationships qualify as fiduciary is a question of federal law. In re Forrest, 47 F.4th 1229, 1235 (11th Cir. 2022) (*citing* In re Angelle, 610 F.2d 1335, 1341 (5th Cir. 1980); In re Cuenant, 339 B.R. 262, 274 (Bankr. M.D. Fla. 2006). Furthermore, the Supreme Court has established that the term "fiduciary" is not to be construed expansively but instead is intended to refer to "technical" trusts. Quaif v. Johnson, 4 F.3d 950, 953 (11th Cir. 1993) (*See* Chapman v. Forsyth, 43 U.S. (2 How.) 202 (1844); Upshur v. Briscoe, 138 U.S. 365 (1891); Davis

v. Aetna Acceptance Co., 293 U.S. 328 (1934). This means that for a fiduciary relationship to exist for § 523(a)(4) purposes, a technical trust must be involved. In re Cuenant, 339 B.R. at 274 (*citing* In re Miceli, 237 B.R. 510, 515 (Bankr.M.D.Fla.1999); In re Kanewske, WL 4381282 at * 7 (Bankr. M.D. Fla. Sept. 29, 2017) (*citing* Quaif v. Johnson, 4 F.3d 950, 953 (11th Cir. 1993).

Although federal law dictates what a fiduciary is, courts also rely on state law to "ascertain whether the requisite trust relationship exists." In re Guerrero, 2010 WL 2926534 at * 2 (Bankr. S.D. Fla. July 20, 2010); Ragsdale v. Haller, 780 F.2d 794, 796 (9th Cir. 1986). Georgia law requires the Court to look to and apply the laws of the state where a limited liability company is incorporated when addressing legal questions about that entity. O.C.G.A. § 14-11-701. Because SMG is a limited liability company organized and established in Florida, Florida law applies.

Generally, under Florida law, a fiduciary relationship is found, "upon the specific factual situation surrounding the transaction and the relationship of the parties. Courts have found a fiduciary relationship implied in law when confidence is reposed by one party and a trust accepted by the other." Orlinsky v. Patraka, 971 So. 2d 796, 800 (Fla. Dist. Ct. App. 2007) (*quoting* Capital Bank v. MVB, Inc., 644 So.2d 515, 518 (Fla. 3d DCA 1994). In other words, to adequately plead a fiduciary relationship, "a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." Watkins v. NCNB Nat'l Bank of Fla., N.A., 622 So.2d 1063, 1065 (Fla. 3d DCA 1993).

The party that alleges such a relationship exists has the burden of proving the fiduciary relationship through competent evidence. Orlinsky, 971 So. 2d at 800 (*citing* Kislak v. Kreedian, 95 So.2d 510, 514–15 (Fla.1957). In an action for breach of fiduciary duty, the party must establish: (1) the existence of a duty, (2) breach of that duty, and (3) damages flowing from the breach. Crusselle v. Mong, 59 So. 3d 1178, 1181 (Fla. Dist. Ct. App. 2011) (*citing* Rocco v. Glenn, Rasmussen, Fogarty & Hooker, P.A., 32 So.3d 111, 116 n. 2 (Fla. 2d DCA 2009)).

Not every type of relationship, however, can be classified as a fiduciary relationship. In ordinary commercial transactions where parties are dealing at "arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other." Mawardi v. Cohen, 381 So. 3d 1, 3 (Fla. Dist. Ct. App. 2023) (*citing* Mac-Gray Servs., Inc. v. DeGeorge, 913 So. 2d 630, 633 (Fla. Dist. Ct. App. 2005).

Similarly, Florida law establishes that corporate officers and directors, as well as managers of limited liability companies, have fiduciary duties of loyalty and of care to the company, not creditors. Fla. Stat. Ann. § 607.0830; Fla. Stat. Ann. § 605.04091; In re Aqua Clear Techs., Inc., 361 B.R. 567, 575 (Bankr. S.D. Fla. 2007); In re Sigma-Tech Sales, Inc., 570 B.R. 408, 418 (Bankr. S.D. Fla. 2017).

Specifically, Fla. Stat. Ann. § 605.04091(1 – 3) states:

> (1) Each manager of a manager-managed limited liability company and member of a member-managed limited liability company owes fiduciary duties of loyalty and care to the limited liability company and members of the limited liability company.
>
> (2) The duty of loyalty includes:

> (a) Accounting to the limited liability company and holding as trustee for it any property, profit, or benefit derived by the manager or member, as applicable:
>
> > 1. In the conduct or winding up of the company's activities and affairs;
> >
> > 2. From the use by the member or manager of the company's property; or
> > 3. From the appropriation of a company opportunity;
>
> (b) Refraining from dealing with the company in the conduct or winding up of the company's activities and affairs as, or on behalf of, a person having an interest adverse to the company, except to the extent that a transaction satisfies the requirements of s. 605.04092; and
>
> (c) Refraining from competing with the company in the conduct of the company's activities and affairs before the dissolution of the company.

> (3) The duty of care in the conduct or winding up of the company's activities and affairs is to refrain from engaging in grossly negligent or reckless conduct, willful or intentional misconduct, or a knowing violation of law.

Fla. Stat. Ann. § 605.04091(1 – 3)

The duty of loyalty requires that the "best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." Taubenfeld v. Lasko, 324 So. 3d 529, 538 (Fla. Dist. Ct. App. 2021) (*citing* Cede & Co. v. Technicolor, Inc., 634 A.2d 345, 361 (Del. 1993). The duty of care requires directors to, "use the amount of care which ordinarily careful and prudent men would use in similar circumstances, and consider all material information reasonably available in making

business decisions". Taubenfeld, 324 So. 3d 538 (*citing* In re Walt Disney Co. Derivative Litig., 907 A.2d 693, 749 (Del. Ch. 2005).

Here, Florida law is clear that when Mr. Dana and SMG entered into the Promissory note in December of 2019, no fiduciary relationship existed. Mr. Dana does not plausibly allege that this was not an "arm's length" transaction. Rather, the allegations are that Mr. Dana became a creditor and was no longer a shareholder or owner of SMG upon entering into the Promissory Note, and there is no evidence to suggest that there was any form of dependent relationship that required one party to advise, counsel or protect the other. Thus, no fiduciary relationship was established by the Promissory Note that could make § 523(a)(4) applicable.

Mr. Dana 's statement that SMG's insolvency expanded the fiduciary duty of its officers and directors to Mr. Dana as a creditor is technically correct. While fiduciary duties held by directors or managers typically do not extend to creditors, these duties do encompass creditors when a corporation becomes insolvent or is in the vicinity of insolvency. In re Aqua Clear Techs., Inc., 361 B.R. 575. Upon insolvency, these duties require a director to exercise due care and manage the company for the benefit of creditors. Id. The fiduciary duty that was created by Florida law, and extended to Mr. Dana upon SMG's insolvency, however, is insufficient to establish the required fiduciary relationship for § 523(a)(4) purposes. This is because Florida law regarding a director or manager's duties to creditors upon insolvency does not create the necessary technical trust required by federal law.

In cases where a corporate fiduciary relationship exists under Florida law, courts have held that these fiduciary relationships are insufficient for a § 523(a)(4) claim because these corporate fiduciary duties do not involve or establish the creation of the required technical trust. In re Antoniou, 651 B.R. 315 (Bankr. M.D. Fla. 2023) (In a matter involving a manager of an LLC who did work "on the side" that should have been performed by the LLC, the bankruptcy court held that the fiduciary duties imposed on a manager of a limited liability company under the Florida statutes do not involve the creation of a technical trust, as required under § 523(a)(4)); Hemenway v. Bartoletta, 2012 WL 4513073 (M.D. Fla. Oct. 2, 2012) (When a LLC that was controlled by the Debtor lost an investor's money though several alleged violations, the Florida statutorily imposed duties of a manager of an LLC do not establish a technical trust, so the fiduciary capacity required by § 523(a)(4) is not created.); In re Esfahani, 2010 WL 3959607 (Bankr. M.D. Fla. Sept. 22, 2010) (In a case involving a complaint filed against a debtor for allegedly misusing property belonging to a LLC that the debtor controlled, the fiduciary duties imposed under Florida statute are limited and do not involve the creation of a trust, so the statute does not create the fiduciary duty required by § 523(a)(4).); In re Lawrence, 2009 WL 3486063 (Bankr. M.D. Fla. Oct. 28, 2009) (When a member of a LLC brought an adversary proceeding against the debtor who managed the LLC, alleging the mishandling funds, the bankruptcy court denied their § 523(a)(4) claim because "[t]he statutory fiduciary duties of loyalty and care a managing member owes to a limited liability company and its members pursuant to [Florida law] do not meet the level of

fiduciary duty required for Section 523(a)(4) purposes."); In re Grosman, 2007 WL 1526701 (Bankr. M.D. Fla. May 22, 2007) (When a debtor, who was the sole managing member of a LLC, was sued by an investor for allegedly stripping the LLC of its assets, the bankruptcy court held that a § 523(a)(4) claim could not proceed, because even though "Florida law does make a managing member accountable to the limited liability company, it does not create a technical or express trust and does not, therefore, make a managing member a fiduciary for the purposes of Section 523(a)(4).").

Upon SMG's insolvency, the fiduciary duties imposed on SMG's officers and directors by Florida law grew to encompass Mr. Dana. These duties, however, do not include the creation of a trust as required by § 523(a)(4). Because such a trust is absent, no fiduciary duty under § 523(a)(4) exists, and no fraud or defalcation claim can be made.

**2. Mr. Dana fails to state a claim for embezzlement under § 523(a)(4).**

Mr. Brilliant argues that any theory Mr. Dana asserts on an embezzlement claim regarding the post-ABC transfers is mistaken, as that claim would belong to the ABC assignee, who has exclusive authority to pursue such claims.

Mr. Dana states that the debt is non-dischargeable under § 523(a)(4) as embezzlement "given that the assignee did not know about or give authorization for said transfers." AC ¶ 128.

To state a claim of nondischargeability under § 523(a)(4) based on embezzlement, "the plaintiff must show that '(i) property owned by another is

rightfully in the possession of the debtor; (ii) the debtor appropriate[d] the property for personal use, and (iii) the appropriation occurred with fraudulent intent or by deceit.'" *Cox v. Corona (In re Corona)*, 657 B.R. 554, 565 (Bankr. N.D. Ga. 2024) (quoting *Ideal Dev. Concepts, LLC v. Gross (In re Gross)*, 639 B.R. 255, 260 (Bankr. N.D. Ga. 2022)). "A defendant cannot commit embezzlement if the defendant is legally entitled to the funds." *Id.* (citations omitted).

Mr. Dana does not allege that he provided or gave Mr. Brilliant any funds. Rather he implies that the assets SMG had but Mr. Brilliant caused to be transferred to other entities in the 'Assignment for the Benefit of Creditors' was embezzlement. There is no evidence or indication that these assets were Mr. Dana's to begin with or that SMG was not legally entitled to those funds. SMG did owe a debt to Mr. Dana, but there are no facts that show the funds and assets SMG transferred were originally owned by Mr. Dana, or that SMG was not legally entitled to those funds.

Thus, the Motion is granted as to this Count.

**D. Count III: 11 U.S.C. § 523(a)(6)**

Mr. Brilliant argues that Count III should be dismissed because it does not relate back to the original complaint for three reasons. First, this is a distinct legal theory with distinct elements that does not appear in the original complaint. Second, the Am. Comp. includes new facts about alleged transactions to support this claim that do not appear in the original complaint. Finally, this theory was available at the time of the original filing and should have been pled then. Additionally, he asserts that even if this claim does relate back, the Am. Comp. does not plead willfulness.

The Am. Comp. alleges the transfers were made for Mr. Brilliant's "sole personal benefit", but Mr. Brilliant argues that does not sufficiently plead that he was acting with the purpose of injuring Mr. Dana, as the law requires.

Mr. Dana argues that Mr. Brilliant's actions were a deliberate and intentional scheme to injure him, by concealing funds and transferring assets out of SMG to avoid paying the debt incurred by the Promissory Note. Mr. Dana also argues that the assertions and facts in the Am. Comp. were the same as in the Original Complaint, and that they merely provided more detail and an additional cause of action.

11 U.S.C. § 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" Willfulness requires "a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another." *Maxfield v. Jennings (In re Jennings)*, 670 F.3d 1329, 1334 (11th Cir. 2012) (quoting *In re Walker*, 48 F.3d 1161, 1163 (11th Cir. 1995)). "[A] debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Id.* (quoting *In re Walker*, 48 F.3d at 1165).

Malicious means "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will." *Id.* (quoting *In re Walker*, 48 F.3d at 1164). Malice does not require a "showing of specific intent to harm another." *Id.* (quoting *In re Ikner*, 883 F.2d 986, 991 (11th Cir. 1989)).

The claim for willful and malicious injury was not specifically stated in the original pleading, so for Mr. Dana to be able to make this claim in the Am. Comp., it

must relate back to the original complaint. The Supreme Court addressed relation back in Mayle v. Felix, 545 U.S. 644 (2005). The general premise from *Mayle* for amending a complaint is "[s]o long as the original and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Mayle*, 545 U.S. at 664.

Here, the operative issue is whether the claim in the Am. Comp. is tied to a "common core of operative facts" that were included in the original complaint. It is true that additional facts were included in the Am. Comp., and some of these were used to support this new claim. This new claim, however, can also be supported with the common core of operative facts. Upon examination of the facts listed in the 31 paragraphs used to establish Count III in the Am. Comp., 21 of those paragraphs relied on facts that were included in the original complaint, 5 paragraphs made statements that could be implied from facts listed in the original complaint, and only 4 paragraphs relied on facts that could not be supported by facts listed in the original complaint. This points to the fact that there are a strong set of "common core operative facts" in the original complaint that can be relied upon to support a claim for willful and malicious injury.

Mr. Brilliant is correct that the elements of § 523(a)(6), a willful and malicious injury, must both be established to succeed on this claim. The facts that this claim relies on that are included in the original complaint, as discussed above, are sufficient to state a plausible claim for a willful and malicious injury. Mr. Brilliant also argues that the willfulness element is negated due to Mr. Dana's claims that Mr. Brilliant's

motives were for self-enrichment, not to injure. This argument is incorrect. A self-enrichment motive does not automatically exclude other motives. One could act to enrich oneself and injure another. These motives are not mutually exclusive. So, this argument does not support dismissing this claim.

Based on the foregoing, the Motion is Denied as to this Count.

**E. New factual allegations should not be read to expand the scope of damages under Counts I and II.**

Here, Mr. Brilliant is arguing that the new factual allegations in the Am. Comp., coupled with the fact that Mr. Dana was not precise about damages, should not increase total damages under the two original counts listed in the original complaint. As the focus here is on the Motion, and deciding damages is not an issue currently before this Court, this question will be addressed at a later time if necessary.

**F. The Amended Complaint is not a shotgun pleading and a more definitive statement is not required.**

Mr. Brilliant argues that due to the expansive factual narrative and the conflation of Mr. Brilliant's conduct mixed with the actions of the other people and entities, Mr. Brilliant cannot identify what conduct and allegations establish each count, and so a meaningful response and an adequate defense cannot be raised.

As discussed above, this Court finds that the facts and allegations laid out in the Am. Comp. regarding the entities and individuals involved are specific enough to support the claims. Therefore the Am. Comp. is not a shotgun pleading, and a more definitive statement is not required.

## III. Conclusion

Accordingly, it is hereby

**ORDERED**, that Motion is **GRANTED** with respect to Count II and **DENIED** with respect to all other Counts.

The Clerk is directed to serve a copy of this Order on counsel for Mr. Dana, counsel for Mr. Brilliant, and the United States Trustee.

**END OF ORDER**